## DAVIS et al. v. TRENHOLM.

### No. 13952.

Court of Civil Appeals of Texas. Dallas.

Dec. 17, 1948.

A. C. Scurlock, of Dallas, for appellants.

Geo. S. Peabody and R. G. Smith, both of Dallas, for appellee.

YOUNG, Justice.

The suit of appellants below (third amended original petition) was in the main for judgment on note and foreclosure of lien on realty, which was countered by Trenholm with plea for enforcement of a sales contract involving the same realty that had been admittedly made by the parties. Upon trial and jury verdict, judgment was rendered decreeing specific performance of aforesaid contract, which proceedings have been brought up for review.

During the year 1945, Trenholm, an employee of Davis, was desirous of buying a home, with his employer willing to financially promote a purchase. The former decided on the improved 3.21 acres in suit, Davis and wife buying it for $5,000 from J. C. McKelvain and by verbal agreement on the same day (September 26, 1945) selling to Trenholm on time, viz.: $100 cash, the balance of $4,900 payable $75 per month beginning October 26, interest at 6%, pay-

able semiannually, beginning January 1, 1946; providing for delivery of deed on payment of one-third of the principal debt; defendant at once going into possession. The paper styled "contract of sale," put in evidence by plaintiffs as reflecting the transaction (omitting field notes), reads: "The State of Texas County of Dallas By this agreement and contract, M. K. Davis and wife Evelyn Ruth Davis, hereinafter called Seller, acting through the under-signed and duly authorized Agent, hereby sells and agrees to convey (or cause to be conveyed) unto George A. Trenholm, here-inafter called Purchaser, and said Pur-chaser hereby agrees to buy and to pay for the following described property: Lying and situated in the City and County of Dallas, State of Texas, being all that * * *. The purchase price is $5,000.00, payable as follows: $100.00 Cash (of which purchaser has deposited with the under-signed agent $——— as part payment, re-ceipt of which is hereby acknowledged by said Agent); and a note for $4900.00 to M. K. Davis, payable $75.00 per month, with interest to be paid on January 1st, and July 1st, at the rate of 6% per annum. When ⅓ of the principle has been paid, seller is to deed the property to the pur-chaser. Purchaser is to have the privilege of paying on or before each interest date. The said executed note or notes herein described to be secured by Vendor's Lien and Deed of Trust with power of sale and with the usual covenants as to taxes, in-surance and default. Seller agrees to fur-nish ——— to said property, which shall be conveyed free and clear of any and all encumbrances except those named herein. If abstract be furnished, Purchaser agrees, within ten days from the receipt of said abstract, either to accept the title as shown by said abstract or to return it to the under-signed Agent, with the written objections to the title. If said abstract is not returned to the Agent with the written objections noted within the time specified, it shall be construed as an acceptance of said title. If title policy be furnished, Purchaser agrees, within ten days from date title com-pany approves the title, to consummate the sale. Restrictions or conditions, imposed in any addition or subdivision of which this property is a part or any existing party wall agreements shall not be recited as ob-jections to the title. If any title objections are made, then the Seller or the Agent shall have a reasonable time to cure said objec-tions or show good and marketable title. In the event of failure to furnish good and marketable title, the cash deposit hereby receipted for is to be returned to Purchaser upon the cancellation and return of this contract; or, Purchaser may enforce speci-fic performance of same. Seller agrees, when title defects (if any) have been cured, to deliver a good and sufficient General Warranty Deed properly conveying said property to said Purchaser, and Purchaser agrees, when said deed is presented, to pay the balance of the cash payment and ex-ecute the note or notes and Deed of Trust herein provided for. Should the purchaser fail to consummate this contract as speci-fied for any reason, except title defects, Seller shall have the right to retain said cash deposit as liquidated damages for the breach of this contract, and shall pay to Agent therefrom the usual sale commission, as per schedule of the Dallas Real Estate Board; or, Seller may enforce specific per-formance of this contract. Seller agrees to pay said Agent the usual sale commission, in accordance with the schedule of the Dal-las Real Estate Board. Taxes for the cur-rent year, and current rents, insurance, and interest (if any) are to be prorated to date of closing. Executed in triplicate this 26th day of September, 1945. This contract sub-ject to the acceptance of Seller. ——— Realtor, Member of Dallas Real Estate Board. By ——— Agent for ——— Ac-cepted: ——— Seller /s/ Geo. A. Trenholm, Purchaser." It was not until October 4 or 5, that above agreement was consummated, when its terms were reduced to writing and dated back to September 26; one copy being signed by Davis and delivered to Trenholm, the other signed by Trenholm and delivered to Davis, with neither copy acknowledged before a No-tary.

This controversy centers around the ob-ligation described in above instrument, ap-pellant contending that a $4,900 note was executed but lost; its terms, however, au-thorizing him to accelerate installments and

declare due the entire indebtedness on default of any monthly payment; defendant, on the other hand, denying that the lost note signed by him contained "the default in payment provisions, the accelerated maturity provisions, the deed of trust provisions and the attorney fee provisions set forth" in plaintiffs' amended petition.

On February 18, 1946, plaintiff Davis delivered to defendant the following letter: "Your continued failure to meet regular payments makes it necessary for me to ask for possession of house located in Irving, Texas, and occupied by you. Such possession is hereby •demanded on or before February 24, 1946." Up to such date, defendant's payments on the initial purchase may be here listed, along with notation on face of checks, viz.: October 5, 1945, $100 "down payment"; November 2, $76.93 "10-26-45 payment"; December 7, $75 "11-26-45 payment"; January 23, 1946 $75 "12-26-45 payment"; February 7, 1946 $78.24 "Interest from 9-26-45 to 1-1-46." In this connection Trenholm testified that the January installment had been tendered to Davis earlier in the month, but declined, the latter requesting that something be done about refinancing the loan (claiming a need for ready money), but later accepting the check. On February 9, according to defendant, his monthly check was also refused for the same reason, he, in the meantime, using every effort to refinance the loan; further stating that on the day the letter of February 18 was received, he was notified of his final discharge from plaintiffs' employment. Notwithstanding plaintiffs' refusal to accept the money, defendant testified to many subsequent monthly tenders of installments, together with semi-annual installments of interest.

Jury answers, in substance, were: (1) That installments on the note mentioned in the contract of sale of September 26, 1945, were payable on the 26th day of each month; (2) first installment on note was due October 26, 1945; (3) the note provided for a 10 percent attorney's fee in case same was placed in the hands of an attorney for collection; (4) said note *did not* provide that failure to pay any installment or interest when due should at the

election of the holder mature the note and same should be at once due and payable; (5) that M. K. Davis and Evelyn Ruth Davis "waived the prompt payment of installments on the note in question."

From above jury findings and evidence which the court ruled as uncontroverted, final judgment was entered in the cause, summarized as follows: Establishing the sales contract of September 26, 1945, as basis of obligation between the parties; that defendant had paid or tendered payments on the $4,900 note in the sum of $1,975, which amount was more than one-third the purchase price, and had demanded a deed to said land in terms of the contract; that plaintiffs were entitled to the amounts of principal and interest as tendered, which defendant was ordered to pay into court; the latter being entitled to deed of conveyance subject to his tendered execution of note and liens for the balance of $3,025 of the purchase price, payable in accordance with the terms and conditions of said contract. The court further found that defendant had paid the necessary amounts into court; plaintiffs being ordered to execute and deliver general warranty deed with retained vendor's lien to the 3.21 acres within ten days; also, in accordance with the September 1945 contract, to deliver either abstract of title or title insurance policy "showing good and marketable title in them." The unpaid balance aforesaid was recited as due and payable in "on or before" monthly installments of $75 beginning November 26, 1947, and a like installment payable the 26th of each month until fully paid, bearing interest at 6 percent per annum, interest payable January 1 and July 1, of each year, with usual provisions for acceleration of note in case of default in installment payments, right of foreclosure and attorney's fee if placed for collection. Defendant was also required to execute deed of trust as additional security; the judgment decreeing outright conveyance of the land to defendant on the same terms and conditions, in event of plaintiffs' refusal to deliver deed, etc., within ten days as heretofore provided.

Appellants' points may be summed up in the following complaints: (1) The court's

error in relying on jury findings for determining rights of the parties and varying therefrom in decreeing that they should make and enter into other and inconsistent agreements; stipulating certain terms for agreements and leaving others to be arrived at by unknown methods; and enforcing all such agreements by specific performance; (2) that defendant's copy of the 1945 contract of sale became an altered instrument when Trenholm afterward had it acknowledged and placed of record, and therefore inadmissible in evidence as a basis for specific performance; (3) that under such contract the court was not warranted in requiring plaintiffs to deliver either an abstract showing good title or a title insurance policy; (4) error of the court in permitting the jury to make a finding on "waiver" and basing its decree thereon; (5) similar error as to findings and conclusion that defendant had made due, valid and lawful tender; also in the court's overruling of both their motion for instructed verdict and for mistrial.

■ The trial court found that appellants had made no objections and took no exceptions to the court's charge, which finding we must regard as conclusive. However, and notwithstanding the court's ruling, we have carefully considered their motion for instructed verdict, the grounds thereof being that all issues between the parties were either matters of law for the court or related to facts that had been established on behalf of plaintiffs "by a preponderance of the evidence;" thereby implying the existence of at least some evidence bearing on the two controlling issues herein,—(Issue 4) of whether the lost note included the provision in event of default of any monthly installment that the entire amount would become due, and (Issue 8) "waiver."[1] We hold that these findings have support in the evidence and

are conclusively adverse to appellants' cause of action.

■ As a result, only questions of law remain for our consideration, involving principally defendants' cross-action for specific performance. On this phase of the litigation we further conclude: (1) That appellants have no just grounds for complaint concerning judgment recitals whereby the contract of sale has been made effective and enforceable. The rights and obligations of both parties, brought forward and preserved in the challenged judgment, were all in strict accord with their original instrument of purchase and sale, which is obviously seen to be an enforceable contract. In fact, such judgment is more favorable to appellants than otherwise, for, under paragraph four thereof, in case of their refusal to execute warranty deed and consequent transfer of title by court decree, they are merely required to pass good and marketable title (no seller's expense of abstract or policy of title insurance). (2) Trenholm's copy of the sales contract was not rendered an altered instrument and inadmissible in evidence because of his later acknowledgment thereof and recordation. 3 C.J.S., Alteration of Instruments, § 28, p. 933. Aside from this, plaintiffs had already placed in evidence a duplicate original of the same writing; also waiving any objection to the acknowledged copy by the following stipulation of counsel: "And we do not seek to deprive the defendant of any term or provision which appears in our copy of that, which has not been altered." Whether acknowledged, as was here done or not, enforceability of the contract in question was not affected.

All contentions presented by appellants are deemed untenable, with result that judgment of the trial court must be affirmed.

---

[1] On issue No. 8, additional to receipt by Davis of the first three installments without protest, Trenholm testified: "I asked him at that time (closing of deal) when he wanted these monthly payments made. That was then the 4th or 5th of the month. I told him I would give him the down payment immediately, which I did either that same day or the following morning, I have forgotten which. And he said it didn't make any particular difference which. And he said it didn't make any particular difference when they were paid, as long as he got it every month."